IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY JOSEPH MAGAW         *
                                                                             *
            v.                                                           *         Civil Case No. RDB-13-1763
                                                           *
COMMISSIONER, SOCIAL SECURITY     *
                                                           *
                                              *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Jeffrey Joseph Magaw, who is appearing *pro se,* has not filed a motion for summary judgment. I have considered the Commissioner's pending motion for summary judgment, which Mr. Magaw did not oppose.[1] [ECF No. 17]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted.

Mr. Magaw applied for Disability Insurance Benefits on March 17, 2008, alleging a disability onset date of December 19, 2007. (Tr. 254-58). His claim was denied initially on June 4, 2008, and on reconsideration on December 29, 2008. (Tr. 135-38, 142-43). An Administrative Law Judge ("ALJ") held a hearing on August 12, 2009, at which Mr. Magaw was represented by counsel. (Tr. 38-62). The ALJ subsequently wrote an opinion denying benefits to Mr. Magaw. (Tr. 119-29). The Appeals Council found error in the ALJ's analysis and

---

[1] On February 27, 2014, the Court sent Mr. Magaw a Rule 12/56 letter advising him of the potential consequences if he did not file an opposition to the Commissioner's motion. [ECF No. 18].

remanded the case to the ALJ on March 15, 2011. (Tr. 130-34). The ALJ then held two additional hearings on March 15, 2012 and May 16, 2012, at which Mr. Magaw was again represented by counsel. (Tr. 63-116). After those hearings, the ALJ again denied benefits to Mr. Magaw in a written opinion dated June 20, 2012, which incorporated by reference the earlier decision. (Tr. 17-37). The Appeals Council then denied review, (Tr. 1–7), making the ALJ's 2012 decision the final, reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Magaw suffered from the severe impairments of osteoarthritis, late effects of musculoskeletal and connective tissue injuries, status post left ACL reconstruction in 1988, right knee arthroscopy in 2007, and left hand tendon repair in 1984, left knee arthritis with meniscal tear, tobacco abuse, and depression. (Tr. 22). Despite these impairments, the ALJ determined that Mr. Magaw retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), with lifting no more than 20 pounds occasionally and 10 pounds frequently, except that he is limited to standing and walking in excess of two hours, but no more than six hours in a workday, he can only occasionally stoop, crouch, crawl, squat, kneel, balance, and climb stairs. He should never climb ladders or scaffolds. He should not be exposed to dangerous heights and dangerous machinery. Additionally, the claimant is limited to only occasional use of the dominant right hand for gripping, handling, and feeling. He should not have to work around concentrated exposure to cold, dust, fumes, gases, or vibrations. The claimant is further limited to simple work performing SVP 1 or 2 jobs, with normal work breaks. To further reduce workplace stress, the claimant's work should require only occasional interaction with the general public.

(Tr. 25). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Magaw could perform, and that he was not therefore disabled. (Tr. 30-31).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining

whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Mr. Magaw's favor that he had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At step two, the ALJ found the severe impairments specified above, citing the record exhibits to support the clinical and diagnostic findings demonstrating severity. (Tr. 22-23). There is some evidence in the record of other diagnoses including diabetes, hypothyroidism, hyperlipidemia, and a history of an intertribal septal aneurysm. (Tr. 92). However, a thorough review of the record does not reveal any functional limitations relating to those additional diagnoses, which either did not require treatment or were controlled by medication. Moreover, even if I were to find that the ALJ erred in her evaluation of any of Mr. Magaw's physical impairments at step two, such error would be harmless. Because Mr. Magaw made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and nonsevere, that significantly impacted Mr. Magaw's ability to work. *See* 20 C.F.R. § 404.1523.

At step three, the ALJ engaged in a comprehensive analysis of Listings 1.02 and 1.04 (pertaining to musculoskeletal disorders) and 12.04 (affective disorders). (Tr. 23-25). The ALJ cited to the specific criteria of each of those Listings, and addressed which of the criteria had not been established. *Id.* For Listings 1.02 and 1.04, Mr. Magaw failed to establish an inability to ambulate effectively or to perform fine and gross dexterous movements effectively, and failed to establish nerve root compression or spinal arachnoiditis. *Id.* With respect to Listing 12.04, the

ALJ used the appropriate special technique to assess whether Mr. Magaw met the "paragraph B" or "paragraph C" criteria of that listing. *Id.* Citing to the evidence of record, the ALJ found only a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and one or two episodes of decompensation. *Id.* The detailed analysis provided by the ALJ contains substantial evidence to support her conclusion that the relevant Listings have not been met or equaled.

At step four, the ALJ provided a summary of Mr. Magaw's testimony both at the remand hearings and, by incorporation, at the original hearing. (Tr. 26, 126). The ALJ also cited an adult function report indicating that Mr. Magaw is able to do some laundry, yard work, and prepare meals, and a consultative exam during which he reported helping his mother and doing his own shopping, cooking, and cleaning. (Tr. 23-24, 300-07, 552-54). With respect to the medical evidence, the ALJ summarized findings from MRI and x-ray studies and physical examinations. (Tr. 26-27). The objective tests showed generally mild findings (with the exception of issues subsequently resolved by surgery), and the physical examinations frequently demonstrated normal gait. *Id.* The ALJ also considered expert testimony provided at the hearing from a medical expert, Dr. Erwin, who had reviewed the treatment notes from Mr. Magaw's treating physicians and had heard Mr. Magaw's testimony at the hearing. (Tr. 27-28, 92-103). Dr. Erwin opined that Mr. Magaw was capable of performing light work. *Id.* The ALJ also considered the mental health records from a consultative examiner, Dr. French, and the treatment records from Upper Bay Counseling and Support Services. (Tr. 28). The ALJ determined that the records consistently reflected moderate mental health limitations, and accordingly imposed certain restrictions in the RFC assessment. (Tr. 25). The ALJ made an adverse credibility assessment, supported by the inconsistency between the medical evidence and Mr. Magaw's testimony, and also by Mr. Magaw's prior felony convictions. (Tr. 28). Finally, the ALJ evaluated the opinion

evidence provided by the treating physicians, Dr. Hsu and Dr. Coksaygan, in addition to the state agency medical consultants. (Tr. 28-29). With respect to the treating physicians, the ALJ appropriately noted that their relatively extreme opinions conflicted with their treatment notes which "consistently document the claimant's complaints of tenderness, but disclose normal musculoskeletal examinations, and normal gait and station." (Tr. 29).

The function of this Court is not to review Mr. Magaw's claims *de novo* or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman*, 829 F.2d at 517; see 42 U.S.C. § 405(g). Under that standard, and in light of the abundant evidence cited by the ALJ suggesting that Mr. Magaw was capable of substantial gainful employment, I recommend that the ALJ's RFC assessment be affirmed.

The ALJ also appropriately completed step five of the sequential evaluation. The ALJ took testimony from the VE regarding whether Mr. Magaw could perform his past relevant work, and determined that he could not.[2] (Tr. 88-90). The ALJ then posed a series of hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 110-14). Ultimately, the ALJ determined that Mr. Magaw's RFC matched one of the hypotheticals he had posed. (Tr. 25, 110-11). The VE had cited six jobs (three at light and three at sedentary) in response to that hypothetical, and the ALJ relied on that VE testimony in her opinion. (Tr. 30-31, 111-12). The ALJ's step five determination, therefore, was supported by substantial evidence.

---

[2] While the VE found that Mr. Magaw would have been capable exertionally of past work as a computer technician, Mr. Magaw denied having been employed in that capacity. (Tr. 85-86). The ALJ made a further finding that Mr. Magaw currently was capable of only unskilled work, eliminating the possibility of work as a computer technician. (Tr. 30).

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 17]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.


Dated:  April 21, 2014 /s/
Stephanie A. Gallagher
United States Magistrate Judge