IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JEFFREY JOSEPH MAGAW** | * |
| | * |
| v. | *    Civil Case No. RDB-13-1763 |
| | * |
| **COMMISSIONER, SOCIAL SECURITY** | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*

**AMENDED REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I issued a Report and Recommendations on April 21, 2014. [ECF No. 19]. After that Report and Recommendations was filed, the Commissioner filed a package of materials that had been mailed by the Plaintiff, Jeffrey Joseph Magaw, who is appearing *pro se*.[1] [ECF No. 20]. Subsequently, Mr. Magaw filed an objection to the Report and Recommendations, in which he represented that he had sent the same package of materials to both the Commissioner and the Court. [ECF No. 21]. United States District Judge Richard D. Bennett therefore recommitted the case to me to consider the new filings and to amend the Report and Recommendations. [ECF No. 22]. I have now considered the Commissioner's pending motion for summary judgment, the materials sent by Mr. Magaw to the Commissioner, and the letter Mr. Magaw filed with this Court. [ECF Nos. 17, 20, 21]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is

---

[1] The materials Mr. Magaw sent included a three-page letter from Mr. Magaw, letters from Mr. Magaw's mother, brother, sister, and two friends, a series of medical records, and a decision on Mr. Magaw's application for medical assistance rendered by an Administrative Law Judge at the Maryland Office of Administrative Hearings. [ECF No. 20].

necessary.  Local R. 105.6 (D. Md. 2011).  For the reasons set forth below, I recommend that the Commissioner's motion be denied and that the case be remanded to the Commissioner for further proceedings.

Mr. Magaw applied for Disability Insurance Benefits on March 17, 2008, alleging a disability onset date of December 19, 2007. (Tr. 254-58). His claim was denied initially on June 4, 2008, and on reconsideration on December 29, 2008.  (Tr. 135-38, 142-43).  An Administrative Law Judge ("ALJ") held a hearing on August 12, 2009, at which Mr. Magaw was represented by counsel.  (Tr. 38-62).  The ALJ subsequently wrote an opinion denying benefits to Mr. Magaw.  (Tr. 119-29).  The Appeals Council found error in the ALJ's analysis and remanded the case to the ALJ on March 15, 2011.  (Tr. 130-34).  The ALJ then held two additional hearings on March 15, 2012 and May 16, 2012, at which Mr. Magaw was again represented by counsel. (Tr. 63-116).  After those hearings, the ALJ again denied benefits to Mr. Magaw in a written opinion dated June 20, 2012, which incorporated by reference the earlier decision.  (Tr. 17-37).  The Appeals Council then denied review, (Tr. 1–7), making the ALJ's 2012 decision the final, reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Magaw suffered from the severe impairments of osteoarthritis, late effects of musculoskeletal and connective tissue injuries, status post left ACL reconstruction in 1988, right knee arthroscopy in 2007, and left hand tendon repair in 1984, left knee arthritis with meniscal tear, tobacco abuse, and depression.  (Tr. 22). Despite these impairments, the ALJ determined that Mr. Magaw retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), with lifting no more than 20 pounds occasionally and 10 pounds frequently, except that he is limited to standing and walking in excess of two hours, but no more than six hours in a workday, he can only occasionally stoop, crouch, crawl, squat, kneel, balance, and climb stairs.  He should never climb ladders or scaffolds.  He should not be exposed to dangerous heights and dangerous machinery.  Additionally, the

> claimant is limited to only occasional use of the dominant right hand for gripping, handling, and feeling. He should not have to work around concentrated exposure to cold, dust, fumes, gases, or vibrations. The claimant is further limited to simple work performing SVP 1 or 2 jobs, with normal work breaks. To further reduce workplace stress, the claimant's work should require only occasional interaction with the general public.

(Tr. 25). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Magaw could perform, and that he was not therefore disabled. (Tr. 30-31).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). I have also reviewed the materials submitted by Mr. Magaw, in which he clarifies, for the first time, that he believes he is entitled to a closed period of disability from December, 2007 through December, 2010 based on his wrist impairment and ensuing fusion surgery. In re-reviewing the file with a focus on that particular issue, it is evident that there is medical evidence regarding his wrist impairment that was not considered or discussed by the ALJ, which may have affected the outcome as to a closed period of disability. While I find that substantial evidence supports the ALJ's decision regarding any continuing disability after December, 2010, I recommend that the case be remanded for the limited purpose of assessing the medical evidence from Dr. Pfaff and others relating to the wrist impairment during the relevant time frame. In so recommending, I express no further opinion as to whether the proposed dates of disability or the ALJ's ultimate conclusion that Mr. Magaw is not entitled to benefits is correct or incorrect.

With respect to the more general question of continuing disability after December, 2010,

the ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Mr. Magaw's favor that he had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At step two, the ALJ found the severe impairments specified above, citing the record exhibits to support the clinical and diagnostic findings demonstrating severity. (Tr. 22-23). There is some evidence in the record of other diagnoses including diabetes, hypothyroidism, hyperlipidemia, and a history of an intertribal septal aneurysm. (Tr. 92). However, a thorough review of the record does not reveal any functional limitations relating to those additional diagnoses, which either did not require treatment or were controlled by medication. Moreover, even if I were to find that the ALJ erred in her evaluation of any of Mr. Magaw's physical impairments at step two, such error would be harmless. Because Mr. Magaw made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and nonsevere, that significantly impacted Mr. Magaw's ability to work. *See* 20 C.F.R. § 404.1523.

At step three, the ALJ engaged in a comprehensive analysis of Listings 1.04 (pertaining to musculoskeletal disorders) and 12.04 (affective disorders).[2] (Tr. 23-25). The ALJ cited to the specific criteria of each of those Listings, and addressed which of the criteria had not been established. *Id.* For Listing 1.04, Mr. Magaw failed to establish nerve root compression or spinal arachnoiditis. *Id.* With respect to Listing 12.04, the ALJ used the appropriate special technique to assess whether Mr. Magaw met the "paragraph B" or "paragraph C" criteria of that

---

[2] The ALJ also engaged in an analysis of Listing 1.02. (Tr. 23). In light of the remand for further analysis of Mr. Magaw's wrist impairment, additional consideration of Listing 1.02 for the relevant closed period would be appropriate. I note that, while it does not appear to have been evidence presented to the Commissioner for consideration, Mr. Magaw has submitted to this Court an undated, partial opinion from the Maryland Office of Administrative Hearings reflecting the conclusion of an Administrative Law Judge that Mr. Magaw satisfied Listing 1.02. [ECF No. 20, at *7-8]. Although such an opinion is clearly not binding on the Commissioner even when it is properly presented for consideration, *see* 20 C.F.R. § 404.1504, further discussion of whether Mr. Magaw satisfied Listing 1.02 during the relevant time frame appears warranted.

listing. *Id.* Citing to the evidence of record, the ALJ found only a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and one or two episodes of decompensation. *Id.* The detailed analysis provided by the ALJ contains substantial evidence to support her conclusion that the relevant Listings have not been met or equaled.

At step four, the ALJ provided a summary of Mr. Magaw's testimony both at the remand hearings and, by incorporation, at the original hearing. (Tr. 26, 126). The ALJ also cited an adult function report indicating that Mr. Magaw is able to do some laundry, yard work, and prepare meals, and a consultative exam during which he reported helping his mother and doing his own shopping, cooking, and cleaning. (Tr. 23-24, 300-07, 552-54). With respect to the medical evidence, the ALJ summarized findings from MRI and x-ray studies and physical examinations. (Tr. 26-27). The objective tests showed generally mild findings (with the exception of the wrist issues which were, as Mr. Magaw concedes, subsequently resolved by surgery), and the physical examinations frequently demonstrated normal gait. *Id.* The ALJ also considered expert testimony provided at the hearing from a medical expert, Dr. Erwin, who had reviewed the treatment notes from Mr. Magaw's treating physicians and had heard Mr. Magaw's testimony at the hearing. (Tr. 27-28, 92-103). Dr. Erwin opined that Mr. Magaw was capable of performing light work. *Id*. However, the only questions posed to Dr. Erwin regarding Mr. Magaw's wrist impairment focused on whether Mr. Magaw had any continuing limitation after the surgery, and did not focus on the closed period before the surgery and during recovery. (Tr. 100-01). The ALJ also considered the mental health records from a consultative examiner, Dr. French, and the treatment records from Upper Bay Counseling and Support Services. (Tr. 28). The ALJ determined that the records consistently reflected moderate mental health limitations, and accordingly imposed certain restrictions in the RFC assessment. (Tr. 25). The ALJ made an

adverse credibility assessment, supported by the inconsistency between the medical evidence and Mr. Magaw's testimony, and also by Mr. Magaw's prior felony convictions. (Tr. 28). Finally, the ALJ evaluated the opinion evidence provided by the treating physicians, Dr. Hsu and Dr. Coksaygan, in addition to the state agency medical consultants. (Tr. 28-29). With respect to the treating physicians, the ALJ appropriately noted that their relatively extreme opinions conflicted with their treatment notes which "consistently document the claimant's complaints of tenderness, but disclose normal musculoskeletal examinations, and normal gait and station." (Tr. 29).

The function of this Court is not to review Mr. Magaw's claims *de novo* or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman*, 829 F.2d at 517; see 42 U.S.C. § 405(g). Under that standard, and in light of the abundant evidence cited by the ALJ suggesting that Mr. Magaw was capable of substantial gainful employment, I recommend that the ALJ's RFC assessment be affirmed, with the limited exception discussed below.

With respect to ongoing disability, the ALJ also appropriately completed step five of the sequential evaluation. The ALJ took testimony from the VE regarding whether Mr. Magaw could perform his past relevant work, and determined that he could not.[3] (Tr. 88-90). The ALJ then posed a series of hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 110-14). Ultimately, the ALJ determined that Mr. Magaw's RFC matched one of the hypotheticals he had posed. (Tr. 25, 110-11). The

---

[3] While the VE found that Mr. Magaw would have been capable exertionally of past work as a computer technician, Mr. Magaw denied having been employed in that capacity. (Tr. 85-86). The ALJ made a further finding that Mr. Magaw currently was capable of only unskilled work, eliminating the possibility of work as a computer technician. (Tr. 30).

VE had cited six jobs (three at light and three at sedentary) in response to that hypothetical, and the ALJ relied on that VE testimony in her opinion. (Tr. 30-31, 111-12). The ALJ's step five determination, therefore, was supported by substantial evidence, with the limited exception of the wrist impairment.

The issue with respect to the wrist impairment is that there were records presented to the Commissioner, prior to the 2012 ALJ opinion after the original remand, demonstrating that a treating physician, Dr. Mark S. Pfaff, had opined in September, 2008 that Mr. Magaw was unable to work until his wrist was fused. (Tr. 1195-98). Dr. Pfaff's opinion stated that Mr. Magaw was unable to use his hands for grasping, pushing, or fine manipulation. (Tr. 1196). Dr. Pfaff's corresponding treatment notes confirmed "tenderness of the anatomic snuffbox with decreased range of motion and grip strength. X-rays of the right wrist shows scaphoid fracture nonunion with degenerative arthritis at the rasioschaphoid region. MRI of the right wrist dated May 5, 2008 and August 18, 2008 shows scaphoid nonunion with chronic degenerative changes." (Tr. 1075). Dr. Pfaff referred Mr. Magaw to a hand specialist, who ultimately performed the fusion. The ALJ makes no assignment of weight to this 2008 opinion from Dr. Pfaff, although the ALJ does make reference to 2011 treatment notes from Dr. Pfaff. (Tr. 27). Moreover, while the ALJ does consider the opinion from Dr. Coksaygan in 2010, and reviews evidence that undermines other portions of the opinion, the ALJ does not address Dr. Coksaygan's opinion that Mr. Magaw was, at that time, essentially precluded from fine manipulations with his right hand and grasping, turning, or twisting objects with his right hand. (Tr. 866-67). In light of this significant medical evidence that was presented to, but not discussed by, the ALJ, I cannot find that the ALJ's opinion was supported by substantial evidence as to whether the RFC assessment was appropriate during the closed period before Mr. Magaw's full recovery from the fusion surgery. Accordingly, I recommend remand to permit the

ALJ to address that issue.

Because Mr. Magaw submitted additional materials that were not considered by the Commissioner, however, I must also consider whether remand is appropriate under sentence six of 42 U.S.C. § 405(g), which provides:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....

42 U.S.C. § 405(g). A reviewing court must find that four prerequisites are met before a case can be remanded to the Commissioner on the basis of new evidence: "(1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court." *See Blair ex rel. J.D.S. v. Astrue,* Civil No. 110cv-1476-RMG-JDA, 2012 WL 1016633 at *4, D.S.C. Feb. 29, 2012 *(*citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985); 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979), *superseded by amendment to statute,* 42 U.S.C. § 405(g), as recognized in *Wilkins v. Sec'y, Dep't of Health & Human Servs*., 925 F.2d 769, 774 (4th Cir. 1991)).

I have reviewed the materials Mr. Magaw submitted to the Court. Many of the medical records had been previously presented to the Commissioner. The remaining materials consist of new medical records, an opinion from the Maryland Office of Administrative Hearings, and letters from Mr. Magaw's friends and family. Mr. Magaw has not made any showing of good cause to explain why the evidence he presented to this Court was not submitted to the

Commissioner, particularly given the fact that he was represented by counsel during all three of his administrative hearings. Furthermore, some of the medical records post-date the Commissioner's decision, and therefore were not material to that decision. Thus, I find no basis for a sentence six remand for the Commissioner to consider the new materials presented by Mr. Magaw. The basis for the recommended remand is for further analysis of the record that had been presented to the ALJ, in light of Mr. Magaw's clarification of his argument for disability.

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 17]; REMAND the case to the Social Security Administration for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.

Dated: May 7, 2014                               /s/
                                                 Stephanie A. Gallagher
                                                 United States Magistrate Judge